# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DARNELLE CREESE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 16-2440 (RMC) |
| | ) | |
| DISTRICT OF COLUMBIA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Darnelle Creese complains that the District of Columbia Department of Corrections fired him because he was not "manly" enough to satisfy the leader of his training class. The District moves to dismiss. However, it has long been the law that gender stereotyping can violate Title VII, 42 U.S.C. §§ 2000e-2 *et seq*. Mr. Creese also sues his supervisor, Dr. Willie Barr, personally, alleging that he is responsible for violating Mr. Creese's rights under the Equal Protection Clause of the U.S. Constitution. Dr. Barr moves to dismiss, but Mr. Creese makes out a legitimate claim that cannot be dismissed at this time. Finally, however, the allegations that D.C. and the supervisor are both responsible for intentional infliction of emotional distress will be dismissed, because they are insufficient as a matter of law and because Mr. Creese failed to provide advance notice of his claim for damages to the Mayor as required by the D.C. Code.

## I. BACKGROUND

The following facts are taken from the Complaint and are accepted as true in the current posture of the case. *See Atherton v. District of Columbia Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009). Mr. Creese was employed at the D.C. Department of Corrections

1

(DOC) from October 1, 2013 until his employment was terminated on December 30, 2013. Compl. [Dkt. 1] ¶ 4. Mr. Creese began his employment at DOC's Basic Correctional Training Program. *Id*. ¶ 10. At the relevant time, Dr. Willie Barr "was a supervisor and training specialist with DOC." *Id*. ¶ 6.

When getting fitted for his uniform, Mr. Creese questioned whether a shirt was too large for him and Dr. Barr remarked "'he's not getting that little shirt. I know he wants that but he's not getting that.'" *Id*. ¶ 11. Mr. Creese understood the comment to imply that men should not wear close-fitting shirts. *Id*. About two weeks later, Dr. Barr approached Mr. Creese "during 'formation'" and said "'[n]o pretty boys needed in jail, so you need to take your earrings out. No beard, need to be clean-shaven.'" *Id*. ¶ 12. Although other men in the training program had beards, long hair, or wore earrings, Dr. Barr did not comment on their appearance, but made repeated comments to Mr. Creese. *Id*. ¶ 13. Additionally, when Mr. Creese was injured during one of the physical re-enactments in the training program, "Dr. Barr ignored him and did not ensure that necessary paperwork was completed to document Creese's injuries." *Id*. ¶ 14. Dr. Barr was more attentive to the needs of other recruits. *Id*. ¶ 15.

Mr. Creese excelled during the training program and was ultimately selected by his classmates to be their class speaker at graduation. *Id*. ¶¶ 16, 19. Based on Dr. Barr's demeanor after the vote, Mr. Creese believed that Dr. Barr was not pleased with the selection. *Id*. ¶ 19. Mr. Creese obtained permission from a training supervisor to bring a personal flash drive to the office to work on his graduation speech; however, once he had completed the speech and printed a copy, "he forgot to remove the flash drive f[rom] the DOC's computer." *Id*. ¶¶ 20-21.

Mr. Creese gave a few of his classmates "hair makeovers" before graduation which Dr. Barr complimented until he learned they were done by Mr. Creese, at which point he "said 'You'

and abruptly walked away." *Id*. ¶ 22. After the graduation ceremony on December 16, 2013, Dr. Barr approached Mr. Creese and said "'remember Creese, you can still be fired even when you go over to the jail.'" *Id*. ¶ 24.

Mr. Creese started his full-time assignment at the D.C. Jail around December 17, 2013. *Id*. ¶ 25. He worked for approximately two weeks without incident, but on December 30, 2013 "two supervisors came to roll call and escorted Creese to the office where he was given a letter of termination, effective immediately. When Mr. Creese inquired about the reason for his termination, the supervisors refused to tell him." *Id*. ¶¶ 26-27. "Creese later learned that he was terminated because he brought his personal flash drive into the workplace." *Id*. ¶ 30. Violations of the DOC's electronics policy generally result in a recruit receiving a single demerit and it takes five demerits to terminate a recruit's employment. *Id*. ¶ 32. This policy was not followed; instead, Mr. Creese never received a written or oral warning, let alone a demerit, before his termination. *Id*. ¶ 33. Mr. Creese alleges that his flash drive, which he believed he had lost, was found in a training facility computer and given to Dr. Barr, who looked at the contents, which included "a nude photograph of Creese from a photo shoot (but without revealing private anatomy) and photographs of other men." *Id*. ¶ 21, 31.

Mr. Creese filed a complaint with the D.C. Office of Human Rights (OHR) on March 24, 2014 alleging discrimination based on sex. *Id*. ¶ 7. The complaint was also cross-filed with the U.S. Equal Employment Opportunity Commission (EEOC). *Id*. On September 15, 2016 the EEOC provided Mr. Creese with a Notice of Right to Sue, *id*. ¶ 8, and Mr. Creese filed the Complaint in this case on December 14, 2016. *See id*. Defendants moved to dismiss for failure to state a claim and failure to comply with statutory notice provisions related to the claim

3

of intentional infliction of emotional distress.  *See* Defs.' Mot. to Dismiss (Mot.) [Dkt. 6].[1]  Mr. Creese opposed, *see* Mem. of P.& A. in Supp. of Opp'n to Defs.' Mot. to Dismiss [Dkt. 8-1], and Defendants replied.  *See* Reply Mem. of P.& A. in Supp. of Defs.' Mot. to Dismiss [Dkt. 12].  The motion is ripe for review.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) requires a complaint to be sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).  Although a complaint does not need to include detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.*  The facts alleged "must be enough to raise a right to relief above the speculative level."  *Id.*  A complaint must contain sufficient factual matter to state a claim for relief that is "plausible on its face."  *Id.* at 570.  When a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, then the claim has facial plausibility.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  A court must treat the complaint's factual allegations as true, "even if doubtful in fact."  *Twombly*, 550 U.S. at 555.  But a court need not accept as true legal conclusions set forth in a complaint.  *Iqbal*, 556 U.S. at 678.

In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference,

---

[1] All page citations to Defendants' motion refer to the electronic case filing (ECF) page number.

and matters about which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007). Generally, when a court relies upon matters outside the pleadings, a motion to dismiss must be treated as one for summary judgment and decided under Rule 56. *See* Fed. R. Civ. P. 12(d). "However, where a document is referred to in the complaint and is central to the plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment." *Nat'l Shopmen Pension Fund v. Disa*, 583 F. Supp. 2d 95, 99 (D.D.C. 2008).

### III. ANALYSIS

#### A. Jurisdiction and Venue

The Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343(b), as two of the claims—Title VII and Equal Protection under the Fifth Amendment to the U.S. Constitution—arise under the Constitution or laws and treaties of the United States. Pursuant to 28 U.S.C. § 1367, the Court also has supplemental jurisdiction over Mr. Creese's intentional infliction of emotional distress claim. Venue is proper in the District Court for the District of Columbia because "a substantial part of the acts and omissions that gave rise to the Complaint" occurred within the District. Compl. ¶ 3; *see also* 28 U.S.C. § 1391(b)(2).

#### B. Motion to Dismiss – 12(b)(6)

Mr. Creese complains that DOC and Dr. Willie Barr discriminated against him on the basis of his sex (male) and caused his termination. Count I alleges that the District of Columbia discriminated against Mr. Creese on the basis of his sex (male), by stereotyping him as insufficiently manly, in violation of Title VII; Count II alleges that Dr. Barr discriminated against him on the basis of his sex (male) in violation of equal protection guaranteed to D.C.

employees by the Fifth Amendment;[2] and Count III alleges that both Defendants engaged in extreme and outrageous conduct and seeks damages for intentional infliction of emotional distress. The Court will address each Count in turn.

1. *Count I – Title VII*

Count I alleges that Defendant DOC "[b]ecause of Plaintiff's sex, including Defendant's perception that Plaintiff did not conform to gender stereotypes of how men should dress and conduct themselves, . . . terminated his employment on December 30, 3013." Compl. ¶ 42. The Supreme Court long ago ruled that gender stereotyping can become discrimination on the basis of sex. After the plaintiff in *Price Waterhouse v. Hopkins* was not considered for partnership, she was advised that she could improve her chances the next year if she would "walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry." 490 U.S. 228, 235 (1989). When she did not conform, she was not put forward for a partnership vote. From these and other comments, the district court concluded that Price Waterhouse had discriminated in its failure to consider Ms. Hopkins for partnership "by consciously giving credence and effect to partners' comments that resulted from sex stereotyping." *Id.* at 237. The Supreme Court accepted that finding and concluded that

> As for the legal relevance of sex stereotyping, we are beyond the day when an employer could evaluate employees by assuming or insisting that they matched the stereotype associated with their group, for 'in forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes.'

*Id.* at 251 (quoting *Los Angeles Dep't of Water & Power v. Manhart*, 435 U.S. 702, 707 n.13

---

[2] The Equal Protection Clause applies to the District of Columbia via the Fifth Amendment. *See Bolling v. Sharpe*, 347 U.S. 497, 499 (1954) (applying Fourteenth Amendment's Equal Protection Clause to D.C. through Fifth Amendment's Due Process Clause).

6

(1978)). Mr. Creese advances such a claim.[3] He alleges that he was discharged because he was not seen as manly enough, just as Ms. Hopkins was perceived as not feminine enough.

DOC argues that Mr. Creese has failed to allege sufficient facts to support an inference of discrimination because he has failed to allege (1) that he was treated differently than other similarly-situated officers; (2) that there was any nexus between Dr. Barr's stray remarks and Mr. Creese's termination; or (3) that DOC treated him less favorably because of his sex. *See* Mot. at 6-9. Mr. Creese responds that the Complaint specifically alleges that "Dr. Barr and other managers at DOC viewed Creese's status or perceived status as a homosexual male, including his appearance, mannerisms, or conduct as insufficiently masculine, or not in conformity with gender stereotypes of how men should act and/or generally comport themselves." Compl. ¶ 34. He contends that the combination of this specific allegation and those concerning Dr. Barr's remarks is sufficient to support an inference of discrimination. The Complaint's Title VII allegations are clear and sufficient to withstand a motion to dismiss.

The Complaint alleges that Mr. Creese was treated differently from similarly-situated men who were viewed as "manly" when he was terminated for violating a DOC policy by using a personal USB device on a DOC computer (for which he had received authorization). He specifically alleges that other male recruits who were not perceived as insufficiently manly

---

[3] Title VII protections are typically understood to prohibit discrimination against members of minority groups, such as women and African Americans. However, "reverse" discrimination can also occur when individuals in a majority group, such as men, are targeted because of their membership in that group. *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 280 (1976) ("We . . . hold today that Title VII prohibits racial discrimination against the white petitioners in this case upon the same standards as would be applicable were they [black] and [their supervisor] white."); *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971) ("Discriminatory preference for any group, minority or majority, is precisely and only what Congress has proscribed."). For instance, reverse discrimination occurs when a man is rejected for a nursing position because it is perceived to be a "woman's occupation."

violated the same policy but were not terminated. *Id*. ¶ 44. According to the Complaint, DOC policy was to issue a demerit to a recruit who violated a rule and a recruit was eligible for termination only if s/he received five demerits. *Id*. ¶ 32. DOC's response that Mr. Creese was fired because the flash drive contained inappropriate images, and not because he used it on DOC equipment, is irrelevant at this point. On a motion to dismiss, a court accepts all well-plead facts as true and does not consider other facts or defenses outside the four corners of the Complaint. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

The Complaint also alleges that Mr. Creese's termination was motivated by Dr. Barr's animus toward him because he was perceived as insufficiently manly. Mr. Creese alleges that Dr. Barr is a training and supervisory officer with DOC,[4] was the individual who received the USB drive after it was found at the training facility, and commented to Mr. Creese at the graduation ceremony that he could "still be fired even when [he] go[es] over to the jail." Compl. ¶¶ 24, 31. Considering all the facts alleged, the Court finds that the Complaint makes out a plausible case that Mr. Creese's termination was motivated by discrimination based on sexual stereotyping. *See Twombly*, 550 U.S. at 570; *Price Waterhouse*, 490 U.S. at 250-51. The Court will deny Defendants' motion to dismiss Count I.

2. *Count II – Section 1983*

Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the

---

[4] DOC argues that the Complaint does not allege that Mr. Creese's *employer* discriminated against him but only that Dr. Barr did so. The argument is unavailing. Mr. Creese adequately alleges that Dr. Barr was a supervisor and Title VII makes employers responsible for the discriminatory behavior of their supervisors. *See Vinson v. Taylor*, 753 F.2d 141, 150-52 (D.C. Cir. 1985).

8

>     Constitution and laws, shall be liable to the party injured in an action
>     at law . . . .

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The alleged wrongdoer must "have exercised power possessed by virtue of state law and made possible only . . . [through] the authority of state law." *Id.* at 49 (internal quotation marks and citation omitted). Title VII does not preempt employment discrimination claims under Section 1983. *See Morris v. WMATA*, 702 F.2d 1037, 1040 (D.C. Cir. 1983) ("Title VII . . . does not similarly preempt the pursuit by state employees of alternative remedies against the agencies or officials that employ them."); *Hamilton v. District of Columbia*, 720 F. Supp. 2d 102, 109 (D.D.C. 2010) ("Title VII is not the exclusive federal remedy for state employees seeking redress for discrimination, and such employees may seek redress under §§ 1981 and 1983."). For these purposes, the District of Columbia is treated as a state. *See* 42 U.S.C. § 1982 (listing "any State or Territory or the District of Columbia").

Mr. Creese alleges that Dr. Barr violated his rights under the Equal Protection Clause of the Fourteenth Amendment, which applies to the District of Columbia under the Fifth Amendment. *See* Compl. ¶ 58 ("Defendant Barr knew that his intentional discrimination based on Creese's sex violated the Equal Protection Clause as made applicable to the District of Columbia through the Fifth Amendment to the U.S. Constitution."). Dr. Barr argues that the Equal Protection claim fails for the same reasons as Mr. Creese's Title VII claim: because the allegations "fail to show discriminatory animus by Dr. Barr" and "fail to sufficiently allege that Dr. Barr engaged in unlawful discrimination." Mot. at 10.

A § 1983 claim of a constitutional violation, like a Title VII claim, requires a showing of intentional discrimination. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264-65 (1977) ("[O]fficial action will not be held unconstitutional solely because it results in a racially disproportionate impact. . . . Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."). Discriminatory intent "implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (citation omitted); *see also Arlington Heights*, 429 U.S. at 265-66 (discriminatory intent need be only a "motivating factor in the decision"). A plaintiff bringing a § 1983 claim "must allege both (1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that the defendant acted under color of the law of a state, territory or the District of Columbia." *Hoai v. Vo*, 935 F.2d 308, 312 (D.C. Cir. 1991).

Count II asserts that Mr. Creese is a member of a protected class by virtue of his sex (male) and was deprived of his right of equal protection regardless of sex. Compl. ¶¶ 51, 54. He further alleges that he was discharged due to Dr. Barr's perception of "Creese's appearance, mannerisms, and/or conduct as 'insufficiently masculine'" and that "similarly situated correctional officers who were females and/or males who acted 'manly' were not terminated for bringing electronic devices into the workplace at DOC." *Id.* ¶¶ 56-57. Mr. Creese also alleges that Dr. Barr was operating under his authority as a supervisor for DOC and thus acted under the color of D.C. law. Under *Twombly* and *Iqbal,* these allegations are sufficient to make out a

plausible case. And, although D.C. protests that Dr. Barr was not the deciding official behind Mr. Creese's termination, that point is contested. The motion to dismiss Count II will be denied.

### 3. *Count III – Intentional Infliction of Emotional Distress*

Mr. Creese blames DOC and Dr. Barr equally for "intentional and malicious conduct" that was "extreme and outrageous" in that he was harassed about his physical appearance, threats were made to fire him, security escorted him from roll call to the office and then off DOC premises, and he was unlawfully terminated. Compl. ¶¶ 64-65. The Court finds that none of these allegations is sufficient to constitute a claim for intentional infliction of emotional distress as a matter of law. In addition, Mr. Creese failed to notify the Mayor of the District of Columbia of his monetary claims for damages, as required by D.C. law, before filing suit. Count III will be dismissed.

Under D.C. law, to be extreme and outrageous, "[t]he conduct must be so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Purcell v. Thomas*, 928 A.2d 699, 711 (D.C. 2007). A claim for intentional infliction of emotional distress has a "very demanding standard" that is "only infrequently met." *Dale v. Thomason*, 962 F. Supp. 181, 184 (D.D.C. 1997). "Especially in the employment context, the standard is exacting." *Evans v. District of Columbia*, 391 F. Supp. 2d 160, 170 (D.D.C. 2005). "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not support such a claim. *Burnett v. Am. Fed'n of Gov't Emps.*, 102 F. Supp. 3d 183, 190 (D.D.C. 2015); *see also Duncan v. Children's Nat'l Med. Ctr.*, 702 A.2d 207, 211-12 (D.C. 1997) ("[G]enerally, employer-employee conflicts do not rise to the level of outrageous conduct."). Mr. Creese's Complaint does not meet these standards. Although the Complaint contains a number of specific

allegations about insulting comments and threats by Dr. Barr to Mr. Creese, none of them—individually or collectively—rises to the level of outrageousness or conduct beyond all possible bounds of decency that might be regarded as "atrocious[] and utterly intolerable in a civilized society," as required to support a claim of intentional infliction of emotional distress. *Purcell*, 928 A.2d at 711. Further, while Mr. Creese may well have felt humiliated when he was very publicly escorted by security officers from roll call and off the premises, that conduct was neither extreme nor outrageous. *See Brown v. Georgetown Univ. Hosp. Medstar Health*, 828 F. Supp. 2d 1, 12 (D.D.C. 2011) (finding escorting an employee from the premises "neither extreme nor outrageous" and dismissing a claim of intentional infliction of emotional distress).

In addition, Mr. Creese concedes that he did not send written notice of his claim to the Mayor as required by D.C. Code 12-309(a) (mandating "notice in writing to the Mayor of the District of Columbia"). Mr. Creese argues that his Complaint filed with OHR fulfilled this legal requirement. *See* Opp'n at 12-13. He is wrong. A plaintiff's "internal D.C. Department of Corrections and EEOC complaints do not constitute adequate notice under § 12-309 as a matter of law," *Jones v. District of Columbia*, 346 F. Supp. 2d 25, 39 (D.D.C. 2004), *rev'd in part on other grounds*, *Jones v. District of Columbia Dep't of Corr.*, 429 F.3d 276 (D.C. Cir. 2005), and neither does an OHR filing. *See Blocker-Burnette v. District of Columbia*, 730 F. Supp. 2d 200, 204 (D.D.C. 2010). "There is only one exception to this requirement of actual written notice to the District prior to filing claims for damages, and that is that 'written notice should not be a prerequisite to legal action if, in fact, actual notice in the form of a *police report* has been received by the District.'" *Jones*, 346 F. Supp. 2d at 38 (quoting *Allen v. District of Columbia*, 533 A.2d 1259, 1262 (D.C. 1987)); *see also* D.C. Code § 12-309 ("A report in writing by the

Metropolitan Police Department, in regular course of duty, is a sufficient notice under this section."). This exception does not apply here.

Count III will be dismissed.

## IV. CONCLUSION

For the foregoing reasons the Court will grant in part and deny in part Defendants' Motion to Dismiss. Count III of the Complaint will be dismissed. A memorializing Order accompanies this Memorandum Opinion.


Date: November 20, 2017                                 /s/
                                       ROSEMARY M. COLLYER
                                       United States District Judge